NO. 25-1819

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

PENGUIN RANDOM HOUSE, LLC, ET AL.,
*Plaintiffs – Appellees,*

v.

JOHN ROBBINS, ET AL.,
*Defendants – Appellants*

JASON MENKE, in his official capacity as a member of the Urbandale
Community School District Board of Education, ET AL.,
*Defendants*

On Appeal From The United States District Court
for the Southern District of Iowa
Case No. 4:23-cv-478 (Hon. Stephen H. Locher, District Judge)

**BRIEF OF AMICI CURIAE AMERICAN BOOKSELLERS FOR
FREE EXPRESSION; ASSOCIATION OF AMERICAN
PUBLISHERS, INC.; COMIC BOOK LEGAL DEFENSE FUND;
INDEPENDENT BOOK PUBLISHERS ASSOCIATION;
EDUCATIONAL BOOK AND MEDIA ASSOCIATION; FREEDOM
TO LEARN ADVOCATES; FREEDOM TO LEARN FOUNDATION;
HALF PRICE BOOKS, RECORDS, MAGAZINES, INC.; SCIENCE
FICTION AND FANTASY WRITERS ASSOCIATION; AND
SISTERS IN CRIME IN SUPPORT OF APPELLEES AND
AFFIRMANCE**

Appellate Case: 25-1819     Page: 1     Date Filed: 08/01/2025 Entry ID: 5543976

DENTONS US LLP

Rebecca Hughes Parker
1221 Ave of the Americas
New York, NY 10020
(212) 768-6700
rebeccahughes.parker@dentons.com

Harrison Michael Rosenthal
4520 Main Street, Suite 1100
Kansas City, MO
(816) 460-2400
harrison.rosenthal@dentons.com

*Attorneys for Amici Curiae*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *Amici Curiae ("Amici")* American Booksellers for Free Expression; Association of American Publishers, Inc.; Comic Book Legal Defense Fund; Independent Book Publishers Association; Educational Book and Media Association; Freedom to Learn Advocates; Freedom to Learn Foundation; Half Price Books, Records, Magazines, Inc.; Science Fiction and Fantasy Writers Association; and Sisters in Crime state that none of the *Amici* has a parent corporation and that no publicly held company owns 10% or more of the stock of any *Amicus.*

# TABLE OF CONTENTS

**Page**

STATEMENT OF IDENTIFICATION .....................................................5

INTEREST OF THE *AMICI* AND SUMMARY OF ARGUMENT.........10

ARGUMENT ...........................................................................13

I.  The Law Has Far Reaching Impact...............................................13

II.  SF 496 Restricts Constitutionally Protected Speech ....................19

    A.  The First Amendment Prohibits Content-Based Book
    Bans in School Libraries. ......................................................19

    B.  The Law Does Not Consider the Works as a Whole or
    their Serious Value, as Required. .........................................22

    C.  Even Without Applying the *Miller/Ginsberg* Test, SF
    496 Is Unconstitutional........................................................26

III.  The Law Is Overbroad................................................................27

IV.  The Law Is Vague.......................................................................30

CONCLUSION .......................................................................33

1

Appellate Case: 25-1819    Page: 4    Date Filed: 08/01/2025 Entry ID: 5543976

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Ashcroft,*
322 F.3d (3d Cir. 2003), *aff'd and remanded,* 540 U.S. 944
(2003) ................................................................................................29

*Ashcroft v. Free Speech Coalition*
535 U.S. 234, 246, 248 (2002) .............................................. 23, 24, 28

*Bolger v. Youngs Drug Prods. Corp.,*
463 U.S. 60 (1983) ............................................................................12

*BookPeople, Inc. v. Wong,*
No. 1:23-CV-00858-ADA, 2023 WL 6060045 (W.D. Tex.
Sept. 18, 2023), *aff'd in part, vacated in part, remanded,*
91 F.4th 318 (5th Cir. 2024) .............................................................23

*Brown v. Ent. Merchs. Ass'n,*
564 U.S. 786 (2011) ...........................................................................21

*Case v. Unified Sch. Dist.*
*No. 233,* 908 F. Supp. 864 (D. Kan. 1995) ........................................27

*Computer & Commc'ns Indus. Ass'n v. Uthmeier,*
No. 4:24CV438-MW/MAF, 2025 WL 1570007 (N.D. Fla.
June 3, 2025) .....................................................................................22

*Counts v. Cedarville Sch. Dist.,*
295 F. Supp. 2d 996 (W.D. Ark. 2003) ..............................................27

*Davis-Kidd Booksellers, Inc. v. McWherter,*
866 S.W.2d 520 (Tenn. 1993) ............................................................25

*Erznoznik v. City of Jacksonville,*
422 U.S. 205, 213–14 (1975) .............................................................12

*Fayetteville Pub. Libr. v. Crawford Cnty., Ark.,*
684 F. Supp. 3d 879 (W.D. Ark. 2023) .......................... 19, 20, 21, 25

Appellate Case: 25-1819    Page: 5    Date Filed: 08/01/2025 Entry ID: 5543976

*Ginsberg v. State of N. Y.,*
  390 U.S. 629 (1968)............................................................22

*GLBT Youth in Iowa Schs. Task Force v. Reynolds,*
  114 F.4th 660 (8th Cir. 2024) ...........................................20

*Johnson v. United States,*
  576 U.S. 591 (2015)............................................................32

*Kolender v. Lawson,*
  461 U.S. 352 (1983)............................................................30

*Mahanoy Area Sch. Dist. v. B. L. by & through Levy,*
  594 U.S. 180 (2021)............................................................27

*Miller v. California,*
  413 U.S. 15, 24 (1973).......................................................22

*Moody v. NetChoice, LLC,*
  603 U.S. 707 (2024)............................................................28

*Penguin Random House LLC v. Robbins,*
  774 F. Supp. 3d 1001 (S.D. Iowa 2025) ....................... *passim*

*PSINet, Inc. v. Chapman,*
  362 F.3d 227 (4th Cir. 2004)..............................................25

*Reno v. ACLU,*
  521 U.S. 844 (1997)............................................. 11, 31, 32

*Sheck v. Baileyville Sch. Comm.,*
  530 F. Supp. 679 (D. Me. 1982) .........................................24

*Shipley, Inc. v. Long,*
  454 F. Supp. 2d 819 (E.D. Ark. 2004)................................25

*Stephenson v. Davenport Cmty. Sch. Dist.,*
  110 F.3d 1303 (8th Cir. 1997)....................................31, 32

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.,*
  393 U.S. 503 (1969)............................................................10

Appellate Case: 25-1819    Page: 6    Date Filed: 08/01/2025 Entry ID: 5543976

*United States v. Stevens,*
    559 U.S. 460 (2010) ................................................................ 31

*Walls v. Sanders,*
    No. 24-1990, 2025 WL 1948450 (8th Cir. July 16, 2025) .................. 21

*Woodis v. Westark Cmty. Coll.,*
    160 F.3d 435 (8th Cir. 1998) ....................................................... 31

## Statutes

Iowa Code
    §§ 256.11(9)(a)(2), (19)(a)(1) ...................................................... 11
    §§ 256.11 (9)(a)(3) ..................................................................... 33
    §§ 256.11 19(a)(1) ...................................................................... 27
    § 595.2(2),(4) ............................................................................. 12
    § 702.17 ..................................................................................... 11
    §§ 728.1(5), 728.2 ...................................................................... 26

## Rules and Regulations

Eighth Circuit Rule 28A(h) ................................................................ 37

Federal Rule of Appellate Procedure
    32(a)(5) ..................................................................................... 36
    32(a)(6) ..................................................................................... 36
    32(f) .......................................................................................... 36

Federal Rules of Appellate Procedure
    29(a)(5) and 32(a)(7)(B) .............................................................. 36

## Other Authorities

https://www.salempress.com/critical_insights_handmaids_tal
    e .............................................................................................. 16

Appellate Case: 25-1819    Page: 7    Date Filed: 08/01/2025 Entry ID: 5543976

<u>S</u>TATEMENT OF IDENTIFICATION

*Amici* submit this *amicus curiae* brief in support of Plaintiffs-Appellees, urging this Court to affirm the decision of the court below preliminarily enjoining Senate File 496's Age-Appropriate Standard and Identity and Orientation Prohibition as violating Plaintiffs' First and Fourteenth Amendment Rights.[1,2] The *amici* are:

**American Booksellers Association** ("ABFE"). ABFE is the free speech initiative of the American Booksellers Association ("ABA"). ABA was founded in 1900 and is a national not-for-profit trade organization that works to help independently owned bookstores grow and succeed. ABA represents 2,863 bookstore companies operating in 3,281 locations. ABA's members are key participants in their communities' local economy and culture. ABFE was founded in 1990 to be the bookseller's voice in the fight against censorship. ABFE's mission is to promote and

---

[1] All parties have consented to the filing of this *amicus curiae* brief.

[2] No counsel for a party authored this brief, in whole or in part, and no counsel or party made a monetary contribution intended to fund preparing or submitting this brief. No person other than *amici curiae* and Media Coalition, Inc. (a 50 year-old trade association of which *amici* are members), made a monetary contribution that was intended to fund preparing or submitting this brief. Plaintiff-Appellee Penguin Random House LLC is a member of the AAP.

Appellate Case: 25-1819    Page: 8    Date Filed: 08/01/2025 Entry ID: 5543976

protect free expression, particularly expression within books and in literary culture, through legal advocacy, education, and collaboration with other groups with an interest in free speech.

**Association of American Publishers, Inc**. ("AAP"). AAP is a not-for-profit organization that represents the leading book, journal, and education publishers in the United States on matters of law and policy, advocating for outcomes that incentivize the publication of creative expression, professional content, and learning solutions. AAP's members includes approximately 115 individual members, who range from major commercial book and journal publishers to small, nonprofit, university, and scholarly presses, as well as leading publishers of educational materials and digital learning platforms. AAP's members publish a substantial portion of the general, educational, and religious books produced in the United States in print and digital formats, including critically acclaimed, award-winning literature for adults, young adults, and children. AAP represents an industry that not only depends upon the free exercise of rights guaranteed by the First Amendment, but also exists in service to our Constitutional democracy, including the unequivocal freedoms to publish, read, and inform oneself.

6

Appellate Case: 25-1819     Page: 9     Date Filed: 08/01/2025 Entry ID: 5543976

**Comic Book Legal Defense Fund** ("CBLDF"). CBLDF is a nonprofit organization dedicated to protecting the legal rights of the comic arts community. With a membership that includes creators, publishers, retailers, educators, librarians, and fans, the CBLDF has defended First Amendment cases in courts across the United States and led important educational initiatives promoting comics literacy and free expression.

**The Independent Book Publishers Association** ("IBPA"). IBPA is the largest publishing trade association in the United States, with over 3,500 members. IBPA connects its members to the publishing industry and provides a forum for publishers to voice their concerns. IBPA's mission is to lead and serve the independent publishing community through advocacy, education, and tools for success.

**Educational Book and Media Association** ("EBMA"). EBMA is a nonprofit organization whose mission is to foster a unique community that brings together a wide range of wholesalers and publishers in order to address the ever-changing book and media buying needs of the educational marketplace.

7

Appellate Case: 25-1819    Page: 10    Date Filed: 08/01/2025 Entry ID: 5543976

**Freedom to Learn Advocates** ("FTLA"). FTLA was founded to promote universal access to books and educational resources for all communities regardless of race, economic status, religion, sexual orientation, gender identity, or political affiliation. Its mission is to resist initiatives that aim to limit access to books and information, often in the form of book banning policies.

**Freedom to Learn Foundation** ("FTLF"). FTLF is a nonprofit organization dedicated to protecting public libraries, public schools, and the educators and librarians who sustain them. FTLF works to ensure these vital institutions remain strong and accessible to all. FTLF believes that every individual has the right to read, learn, and engage with ideas without censorship. Its mission is to fund and defend libraries and schools, and to support those who safeguard access to knowledge and opportunity.

**Half Price Books, Records, Magazines, Inc**. ("Half Price Books"). Half Price Books is America's largest family-owned retailer for new and used books with a bustling website and more than 100 brick-and-mortar stores nationwide. With a foundation of keeping books in circulation and helping make the world a little better, Half Price Books

8

Appellate Case: 25-1819    Page: 11    Date Filed: 08/01/2025 Entry ID: 5543976

has a long history of partnering with literacy programs and charity organizations nationwide.

**Science Fiction and Fantasy Writers Association** ("SFWA"). Science Fiction and Fantasy Writers of America, Inc. DBA The Science Fiction and Fantasy Writers Association is a nonprofit organization focused on providing support, defense, advocacy, education, and resources for speculative fiction writers and the publishing industry. SFWA advocates for the rights of authors and works to promote the freedom to write, publish, and distribute speculative fiction – including science fiction, fantasy, and related genres – without undue governmental restriction.

**Sisters in Crime.** Sisters in Crime is the premier crime writing association focused on equity and inclusion in its community and in publishing. Founded in 1986 to represent and advocate for women crime writers, Sisters in Crime celebrates and honors this history with its name while it continues to work for all who share a commitment to and love for a vibrant, inclusive community. Sisters in Crime's 4,000+ members enjoy access to tools to help them learn, grow, improve, thrive, and reinvent if necessary.

9

Appellate Case: 25-1819    Page: 12    Date Filed: 08/01/2025 Entry ID: 5543976

## INTEREST OF THE *AMICI* AND SUMMARY OF ARGUMENT

*Amici'*s members, as more fully described above, are authors, publishers and booksellers – creators and disseminators of First Amendment-protected speech. They publish, produce, distribute and sell books, magazines, videos, works of art and printed materials of all types, including works that are scholarly, literary, artistic, scientific and entertaining. Many of these works are intended for public school libraries, where they reach a willing audience.

This case is not just about school libraries in Iowa, but has ramifications far beyond, particularly as to the rights of minors to receive constitutionally protected speech that *amici* make possible. Senate File 496 ("SF 496") places, as the District Court said, a "puritanical 'pall of orthodoxy'" over school libraries. *Penguin Random House LLC v. Robbins*, 774 F. Supp. 3d 1001, 1032 (S.D. Iowa 2025) (citing *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 868–69, 871 (1982) (plurality opinion) ("*Pico*") ("Our Constitution does not permit the official suppression of ideas."); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969) ("In our system, students may not be regarded as closed-circuit recipients of only

10

Appellate Case: 25-1819    Page: 13    Date Filed: 08/01/2025 Entry ID: 5543976

that which the State chooses to communicate."). These school libraries can serve as the primary place students are able to obtain books when public libraries are not accessible and buying books is not feasible. *See Pico*, 457 U.S. at 868–69 (stating that "students must always remain free to inquire" and the "school library is the principal locus of such freedom"); *Reno v. ACLU*, 521 U.S. 844, 880 (1997) ("[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.") (citation omitted).

Among other things, SF 496 prohibits any K-12 public school in Iowa from maintaining a "library program" containing "any material with descriptions or visual depictions" of a "sex act," as defined in the state's criminal code.[3] Iowa Code §§ 256.11(9)(a)(2), (19)(a)(1). The law contains no variation for the age of the minor – it applies to students in every grade from K through 12. Nor does it contain consideration of the value of the work as a whole. Thus, even for a high school senior who is

---

[3] The criminal code's definition of "sex act" is contained in Iowa Code § 702.17.

Appellate Case: 25-1819    Page: 14    Date Filed: 08/01/2025 Entry ID: 5543976

above the legal age for marriage in Iowa,[4] SF 496 requires schools to remove materials containing only one description of an enumerated sex act, no matter how innocuous or brief. "[A] restriction of this scope is more extensive than the Constitution permits," because the government "may not reduce the adult population to reading only what is fit for children." *Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60, 73 (1983) (holding unconstitutional a ban on mail advertisements that would expose children to "sensitive and important subjects such as birth control" and stating that the "level of discourse reaching a mailbox simply cannot be limited to that which would be suitable for a sandbox."). *Id.* at 71. *See also Erznoznik v. City of Jacksonville* (1975), 422 U.S. 205, 213–14 ("Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them.").

---

[4] See Iowa Code § 595.2(2),(4), setting the minimum age for marriage at 18, but allowing marriage at 16 or 17 with parental consent and a court order.

Appellate Case: 25-1819   Page: 15   Date Filed: 08/01/2025 Entry ID: 5543976

The blunderbuss approach of SF 496 – restricting access by students aged 5 to 18 from their school library of any work which even just describes a single sex act – does not meet the constitutional requisite, and the record is clear that the *un*constitutional applications of this law far outweigh the constitutional ones.

The protection of children is an important purpose, but the law does not permit Appellants to achieve that purpose by cutting constitutional corners.

## ARGUMENT

### I. The Law Has Far Reaching Impact

The reach of SF 496's unconstitutional restriction of books extends further than just school libraries. The law will have a direct impact on the ability of the wide range of writers, artists, publishers, distributors, and retailers that *amici* represent to write, create, publish, produce, distribute, and sell books and literary works of all types, including materials that are scholarly, journalistic, educational, artistic, scientific, and entertaining. This will be felt certainly within the state of Iowa and with potential nationwide ramifications if this law is upheld.

For authors, represented by *amici* Sisters in Crime, and SFWA, creators in the comic book arts, represented by the CBLDF, SF 496

13

Appellate Case: 25-1819   Page: 16   Date Filed: 08/01/2025 Entry ID: 5543976

would substantially limit their ability to write or create on topics of their choosing. A book stigmatized as pornography can be seen as too risky to sell, especially for an independent local bookstore or comic shop that relies on strong community goodwill, which can in turn affect the choices that publishers make in acquiring or editing new books.[5] The stigmatizing effect of being labeled "pornographic" under SF 496 is profound: authors may refrain from writing candidly about topics they would otherwise explore for fear of exclusion from school libraries. This chilling effect on expression undermines the very purpose of the First Amendment and distorts the editorial choices of authors, illustrators, and publishers alike.

SF 496 is a statewide ban affecting books in "dozens of school districts across the state. Meaning: the authors are being cut off from reaching tens of thousands of potential readers." *Penguin Random House*, 774 F. Supp. 3d at 1023.

---

[5] Iowa officials have contributed greatly to such a stigma. Iowa State Representative Skyler Wheeler, Chair of the House Education Committee, said of the purpose of SF 496: "Porn doesn't belong in school libraries. Books that don't contain porn can remain on shelves." App. 240; R. Doc. 104-7. Iowa governor Kim Reynolds echoed this, calling the regulated books "pornographic" and "nasty." App. 246; R. Doc. 104-8.

Appellate Case: 25-1819    Page: 17    Date Filed: 08/01/2025 Entry ID: 5543976

Further, booksellers, represented by the ABFE and Half Price Books, cannot fulfill their mission if their books are not purchased by school libraries; nor can publishers, represented by the AAP and IBPA, commercially succeed if their customers (such as school libraries) are unable to stock and lend a large amount of constitutionally protected books.

The record submitted by Plaintiffs-Appellees, and cited by the District Court, makes clear the broad threat to free speech SF 496 represents. Iowa school districts determined that hundreds of books would be prohibited by SF 496 before the district court issued its prior preliminary injunction. App. 210-19; R. Doc. 104-5. Plaintiffs-Appellees provided a similar list of books removed as of June 6, 2024, while the prior preliminary injunction was in effect. App. 221-37; R. Doc. 104-6. These books include:

- Barbara Hollander's *Marriage Rights and Gay Rights: Understanding the Constitution*, a book aimed at grades 7 and up that contains case documents and analysis pertaining to recent Supreme Court precedent;

Appellate Case: 25-1819     Page: 18     Date Filed: 08/01/2025 Entry ID: 5543976

- *I Know Why the Caged Bird Sings* by Maya Angelou, an award-winning book recognized for its value in teaching students resilience;

- *Endometriosis* by Stephanie Watson, *Urinary Tract Infection* by Krista West, and other medical books on the human body and sexual health;

- Art Spiegelman's *Maus*, the Pulitzer Prize-winning autobiographical graphic novel renowned for its examination of the Holocaust and its impact on the author's family;

- *The Handmaid's Tale* by Margaret Atwood, the iconic reflection on freedom, values, and the treatment of women that schools across the country are making accessible to students through both the original novel and a graphic novel adaptation;[6]

- *Saga* by Brian K. Vaughn and Fiona Staples, the award-winning graphic novel series on family, friendship, and prejudice in a war-torn universe;

---

[6] https://www.salempress.com/critical_insights_handmaids_tale

16

Appellate Case: 25-1819    Page: 19    Date Filed: 08/01/2025 Entry ID: 5543976

- *The Fault in Our Stars* by John Green, a profound reflection on love, meaning, and mortality as two teens find each other while dealing with cancer;

- *Forever* by Judy Blume, a young adult book that initially sparked controversy when first published in 1975 but has gone on to become a widely recognized classic, inspiring multiple study guides;

- *#famous* by Jilly Gagnon and *Going Viral: A Socially Distant Love Story* by Katie Cicatelli-Kuc, young adult novels that explore the complexities of life in the age of social media;

- Laurie Halse Anderson's *Speak*, which has helped countless teens work through the trauma of sexual assault;

- *The Magic Fish* by Trung Le Nguyen, a widely celebrated graphic novel that explores the immigrant experience, fairy tales, and personal identity;

- *Ulysses* by James Joyce, a modernist take on Homer's *Odyssey* that was once ruled obscene but is now considered to be one of the most important and influential works of twentieth-century literature;

17

Appellate Case: 25-1819    Page: 20    Date Filed: 08/01/2025 Entry ID: 5543976

- *Beloved*, *Song of Solomon*, *Sula*, and *The Bluest Eye*, globally recognized classics by Toni Morrison, winner of the Nobel Prize for Literature;

- *Brave New World* by Aldous Huxley, a foundational dystopian novel exploring the dangers of authoritarian control through engineered happiness and social conformity;

- *Slaughterhouse-Five* by Kurt Vonnegut, a widely taught antiwar novel examining trauma, fatalism, and human cruelty through nonlinear time and science fiction motifs;

These books, and the hundreds of others that were removed in anticipation of SF 496, were selected for inclusion in the school library because of their value for different students, based on the professional judgment of school librarians and officials. "The vocation of a librarian requires a commitment to freedom of speech and the celebration of diverse viewpoints unlike that found in any other profession." *Fayetteville Pub. Libr. v. Crawford Cnty., Ark.*, 684 F. Supp. 3d 879, 891 (W.D. Ark. 2023). Indeed, books in Iowa public school libraries are carefully curated with their audience in mind. According to Iowa City Community School District official Lisa Petrie, "Our professional

18

Appellate Case: 25-1819    Page: 21    Date Filed: 08/01/2025 Entry ID: 5543976

training requires books that are appropriate and valuable for high school students but that may be too mature for elementary school students not be made available to elementary school students, and I take my professional responsibilities seriously." App. 187-88; R. Doc 104-1, at ¶19. As Ms. Petrie explained, when a diligent and good faith effort was made to remove books that contain a description of a sex act pursuant to SF 96, no pornographic or obscene books were found. *Id.* Instead, scores of books with significant educational value – books like the ones above, that, for example, help teens recover from sexual trauma or learn about significant historical events – were affected.

As written, SF 496 provides a legal basis for eliminating a substantial portion of the history of human creativity from school library shelves.

## II.  SF 496 Restricts Constitutionally Protected Speech

A.  <u>The First Amendment Prohibits Content-Based Book Bans in School Libraries.</u>

First Amendment rights extend to library patrons, including school library patrons. The District Court applied the correct standard to SF 496, recognizing "that laws imposing statewide, content-based restrictions on the availability of materials for minors [like SF 496]

19

Appellate Case: 25-1819    Page: 22    Date Filed: 08/01/2025 Entry ID: 5543976

should be tethered to the adult obscenity standard, as adjusted for minors." *Penguin Random House,* 774 F. Supp. 3d at 1023.

This is a case about the restriction of vital information available in school libraries, institutions that are not "simply an arm of the state." *Fayetteville Pub. Libr.,* 684 F. Supp. 3d at 891.[7] "By virtue of its mission to provide the citizenry with access to a wide array of information, viewpoints, and content, the public library is decidedly not the state's creature; it is the people's." *Id.* The same is true for school libraries, which play an integral role in supporting the academic, social, and emotional development of minors, providing equitable access to resources that prepare students for the real world. SF 496 would significantly hamper this mission.

---

[7] This is *not* a case about government speech, contrary to Defendants/Appellees' argument, which ignores the law of the case established by this Court in the previous appeal. As this Court stated, "the Supreme Court has not extended the government speech doctrine to the placement and removal of books in public school libraries." *GLBT Youth in Iowa Schs. Task Force v. Reynolds,* 114 F.4th 660, 667 (8th Cir. 2024). The State did not make that argument when this came again before the District Court and has waived the argument in this appeal. In any event, as explained herein and by the Plaintiffs (Appellee's Br. at 45-51), precedent is clear that a public school library collection is not government speech.

Appellate Case: 25-1819    Page: 23    Date Filed: 08/01/2025 Entry ID: 5543976

As this Circuit has recently recognized, material in school libraries, which exist outside of the curriculum, is not the same as material assigned in classroom for the purposes of First Amendment protection. *Walls v. Sanders*, No. 24-1990, 2025 WL 1948450, at *4 (8th Cir. July 16, 2025) (in assessing whether the curriculum requirement was constitutional, the Court emphasized that it was "deal[ing] not with books in a library, but instead with in-classroom instruction and materials…").

While the rights of adults are not coextensive with those of minors, youth do have First Amendment rights (*see, e.g., Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 794 (2011))*, and for good reason:

> Youth are people, not mere people-in-waiting or extensions of their parents. They have their own interests, ideas, and minds. Not only that, but they are citizens in training. The responsibilities and privileges of citizenship are significant, and our constitutional system is better served when its citizens build those muscles over time, beginning when they are young, rather than all at once the day they come of age.

*Computer & Commc'ns Indus. Ass'n v. Uthmeier*, No. 4:24CV438-MW/MAF, 2025 WL 1570007, at *16 (N.D. Fla. June 3, 2025) (noting that the "First Amendment recognizes the rights of youth to learn, to refuse to salute the flag, to protest war, to view films, to play video

21

Appellate Case: 25-1819     Page: 24     Date Filed: 08/01/2025 Entry ID: 5543976

games, to attend political rallies or religious services even without the authorization of their parents, and more."). *Id.*

The school library is a unique setting in public education, providing students with voluntary access to a wide range of ideas and information—access that is essential to their intellectual growth and preparation for citizenship in a free society.

B.  <u>The Law Does Not Consider the Works as a Whole or their Serious Value, as Required.</u>

SF 496 impermissibly regulates protected speech without using the three-pronged test the Supreme Court set out in *Miller/Ginsberg,* as required. *See Ginsberg v. State of N. Y.,* 390 U.S. 629 (1968), *modified by Miller v. California,* 413 U.S. 15, 24 (1973). The *Miller/Ginsberg* test contains the following elements: "(a) whether 'the average person, applying contemporary community standards' [sic] would find that the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 U.S. at 24 (citation omitted).

Appellate Case: 25-1819    Page: 25    Date Filed: 08/01/2025 Entry ID: 5543976

SF 496 does not take into account the work as a whole, a fatal flaw in the law. SF 496 "makes no attempt to tether book removal requirements to the *Ginsberg* standard." *Penguin Random House*, 774 F. Supp. 3d at 1025. *See also BookPeople, Inc. v. Wong*, No. 1:23-CV-00858-ADA, 2023 WL 6060045, at *3 (W.D. Tex. Sept. 18, 2023), *aff'd in part, vacated in part, remanded,* 91 F.4th 318 (5th Cir. 2024) ("Notably, this definition of 'sexually explicit' material does not follow the definition of obscenity approved by the Supreme Court in *Miller*…Because of this, there is the potential that the designation of a book as 'sexually explicit' would violate the First Amendment."). In *Ashcroft v. Free Speech Coalition*, the Supreme Court found a law proscribing "[a]ny depiction of sexually explicit activity, no matter how it is presented," and establishing "severe punishment" on the basis of a single graphic depiction of sexual activity "without inquiry into the work's redeeming value" to be "inconsistent with an essential First Amendment rule: The artistic merit of a work does not depend on the presence of a single explicit scene." 535 U.S. 234, 246, 248 (2002). This applies to the school setting too. While "the state may have a greater responsibility to protect youth from obscenity than from materials

23

Appellate Case: 25-1819    Page: 26    Date Filed: 08/01/2025 Entry ID: 5543976

merely deemed objectionable on vocabular grounds… the state may not impede individual expression even on obscenity grounds except in accordance with judicially-supervised standards requiring a showing that the challenged expression, taken as a whole, lacks 'serious literary, artistic, political, or scientific value' and 'appeal(s) to the prurient interest in sex.'" *Sheck v. Baileyville Sch. Comm.*, 530 F. Supp. 679, 687 (D. Me. 1982) (citation omitted).

Compounding the constitutional problem is the fact that law does not account for the age of the minor. SF 496 fails to regulate with the nuance required by the First Amendment, treating all minors under the age of 18 as a monolith. As the Appellees argue, SF 496 does not implement an age-appropriate regime, it implements an age indifferent one. Appellee's Br. at 4. "[C]ommon sense tells us" that "[o]bviously, a seven-year old's capacity is far different from that of a seventeen-year old." *Fayetteville Pub. Libr.*, 684 F. Supp. 3d at 887. *See also Shipley, Inc. v. Long*, 454 F. Supp. 2d 819, 829-30 (E.D. Ark. 2004) (invalidating prohibition on the "display" of "material which is harmful to minors" because it "effectively stifles the access of adults and older minors to communications and material they are entitled to receive and view").

24

Appellate Case: 25-1819    Page: 27    Date Filed: 08/01/2025 Entry ID: 5543976

Older minors derive legitimate value from books that younger minors do not. Courts addressing laws restricting minors' access to material – laws that often applied the *Ginsberg/Miller* standard (which SF 496 does not) – have either invalidated such laws as overbroad or vague, or limited their scope so that any restriction is minimal and only applies to materials lacking serious value for older minors.[8]

SF 496 is even more extreme: it mandates outright removal of any book with a description of a sex act, regardless of value or whether those books are in the high school library rather than the elementary or middle school library. This blanket removal forecloses any individualized or age-sensitive assessment of whether books are developmentally appropriate for the age level of the particular school library, resulting in the loss of access to a wide range of constitutionally protected works for all students, including older minors.

---

[8] For example, in *PSINet, Inc. v. Chapman*, 362 F.3d 227 (4th Cir. 2004), and *Shipley, Inc. v. Long*, 454 F. Supp. 2d 819, courts struck down laws that failed to account for age or the work's value as a whole. Where upheld, restrictions have been limited to materials lacking serious literary, artistic, political, or scientific value for a reasonable 17-year-old minor. *See Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 528 (Tenn. 1993).

Appellate Case: 25-1819    Page: 28    Date Filed: 08/01/2025 Entry ID: 5543976

Further, the "unrebutted evidence shows that school officials already limited the access of younger readers to unsuitable books before the enactment" of SF 496. *Penguin Random House*, 774 F. Supp. 3d at 1030. Iowa law has long prohibited school libraries from having books that were obscene as to minors, requiring consideration of the work as a whole. Iowa Code §§ 728.1(5), 728.2.

C.   Even Without Applying the *Miller/Ginsberg* Test, SF 496 Is Unconstitutional.

SF 496 fails even without applying the three-pronged *Ginsberg* test; as the District Court held, the law also fails the standards promulgated by *Pico*.

*Pico* dealt with removal of nine books from a school district's libraries (a far cry, of course, from the hundreds removed in the instant case), and has been read by some to hold that removal of a book from a school library may be appropriate if the book contains "pervasive vulgar[ity]." 457 U.S. at 871. SF 496 does not pass this bar either – the text does not distinguish vulgar descriptions from other descriptions of sex acts, nor does it require pervasiveness. *See* Iowa Code §§ 256.11 19(a)(1); 702.17. *See also Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 594 U.S. 180, 190 (2021) (recognizing that the First Amendment

26

Appellate Case: 25-1819   Page: 29   Date Filed: 08/01/2025 Entry ID: 5543976

protects vulgar speech). Of course, disagreement with viewpoints espoused in the removed materials is clearly not enough to justify removal in a school setting, no matter how distasteful some may think the book is. *See, e.g., Case v. Unified Sch. Dist. No. 233*, 908 F. Supp. 864 (D. Kan. 1995) (restoring removed book to school library, citing improper motivation by the school board and noting that the availability of the book from other sources does not cure Defendants' improper motivation for removing the book); *Counts v. Cedarville Sch. Dist.*, 295 F. Supp. 2d 996, 1004 (W.D. Ark. 2003) (holding that getting parental consent to check out a book constitutes restriction on access and stating that "[r]egardless of the personal distaste with which these individuals regard 'witchcraft,' it is not properly within their power and authority as members of defendant's school board to prevent the students at Cedarville from reading about it.")

## III.  The Law Is Overbroad

A statute is overbroad if a "substantial number of [its] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (*citing Americans for Prosperity Found. v. Bonta*, 594 U.S. 595,

27

Appellate Case: 25-1819    Page: 30    Date Filed: 08/01/2025 Entry ID: 5543976

615 (2021) (finding provision facially unconstitutional)). "Under the legal standard applicable to cases involving statewide restrictions on books in bookstores or public libraries, the results of the *NetChoice* analysis are clear and unequivocal: the book restrictions in Senate File 496 are facially unconstitutional." *Penguin Random House*, 774 F. Supp. 3d at 1008.[9]

The overbreadth doctrine prohibits the Government from restricting even unprotected speech where "a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coal.,* 535 U.S. at 255. An overbreadth analysis often engages in the same questions as the narrow tailoring prong of a strict scrutiny analysis. *See ACLU v. Ashcroft,* 322 F.3d, 240, 266 (3d Cir. 2003), *aff'd and remanded,* 540 U.S. 944 (2003) ("Overbreadth analysis—like the question whether a statute is narrowly tailored to serve a compelling governmental interest—examines whether a statute encroaches upon speech in a constitutionally overinclusive manner.").

---

[9] Appellee's Br. at 27-30.

Appellate Case: 25-1819    Page: 31    Date Filed: 08/01/2025 Entry ID: 5543976

The record is replete with examples of "forced removal of books that are not pornographic or obscene. Accordingly—and even if one interprets the language of Senate File 496 as narrowly as reasonably possible and focuses only on a representative sample of school districts—the law has been unconstitutionally applied in dozens (if not hundreds) of situations and constitutionally applied in one." *Penguin Random House*, 774 F. Supp. 3d at 1008. The State misapplies the *NetChoice* framework by vastly overstating the statute's legitimate reach. It argues the law has thousands of constitutional applications because it could theoretically exclude any book describing a sex act – regardless of whether such a book would ever appear on a public school library shelf. Appellant's Br. at 51-54. But that assumption is disconnected from the record. Iowa librarians already exercised professional judgment to ensure collections were developmentally appropriate for the grade level of the school library. *See* App. 187-88; R. Doc. 104-1, at ¶19. When schools applied SF 496, they did not uncover obscenity or pornography. They removed *Maus*, *The Handmaid's Tale*, *Beloved*, and *I Know Why the Caged Bird Sings*. *See* App. 210-19; R. Doc. 104-5; App. 221-37; R. Doc. 104-6. These removals were not

Appellate Case: 25-1819     Page: 32     Date Filed: 08/01/2025 Entry ID: 5543976

outliers; they were representative. The record confirms that SF 496 has been applied unconstitutionally in dozens—if not hundreds—of instances, and constitutionally in only one. *Penguin Random House*, 774 F. Supp. 3d at 1008. That is the relevant comparison under *NetChoice*, and it forecloses the State's facial challenge defense.

## IV.   The Law Is Vague

Overbreadth challenges may overlap substantially with Fourteenth Amendment void-for-vagueness challenges, and here the vagueness of SF 496 exacerbates its overbreadth. *See Kolender v. Lawson,* 461 U.S. 352, 358 n. 8 (1983) ("[W]e have traditionally viewed vagueness and overbreadth as logically related and similar doctrines."). A regulatory scheme is void for vagueness if it "forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application," or if it enables "arbitrary and discriminatory enforcement" by "impermissibly delegat[ing] basic policy matters to [government officials] for resolution on an ad hoc and subjective basis." *Stephenson v. Davenport Cmty. Sch. Dist.,* 110 F.3d 1303, 1308 (8th Cir. 1997) (internal citations and quotations omitted); *see also Reno*, 521 U.S. at

Appellate Case: 25-1819     Page: 33     Date Filed: 08/01/2025 Entry ID: 5543976

871-72 (stating that the vagueness of a "content-based regulation . . . raises special First Amendment concerns because of its obvious chilling effect on free speech").

For example, in *United States v. Stevens*, 559 U.S. 460 (2010), the Supreme Court upheld a ruling that a ban on videos of animal cruelty was unconstitutionally overbroad, noting that the goodwill of the government cannot be relied on to use an overbroad law responsibly.

Regulations must define their prohibitions and requirements "with sufficient definiteness that ordinary people can understand" what is required, and "establish standards to permit [government officials] to enforce the law in a non-arbitrary, non-discriminatory manner." *Woodis v. Westark Cmty. Coll.,* 160 F.3d 435, 438 (8th Cir. 1998) (citations omitted). Where "the literal scope of the [] regulation is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts." *Stephenson,* 110 F.3d at 1308-09 (internal quotations and citations omitted); *see also Reno,* 521 U.S. at 871-72 (where the vagueness arises amidst a "content-based regulation of speech[,] [t]he vagueness of such

31

Appellate Case: 25-1819    Page: 34    Date Filed: 08/01/2025 Entry ID: 5543976

a regulation raises special First Amendment concerns because of its obvious chilling effect on free speech").

There is "grave uncertainty" about how to understand the scope of SF 496, and even if some parts of what the terms encompass might be "straightforward" exercises of government power, the vagueness is fatal. *Johnson v. United States,* 576 U.S. 591, 597, 602 (2015). "[T]he failure to define the pivotal term of a regulation can render it fatally vague," particularly where common tools courts use to interpret imprecise terms, such as "the common usage of statutory language, judicial explanations of its meaning, and previous applications of the statute to the same or similar conduct," fail to provide necessary clarity. *Stephenson,* 110 F.3d at 1310 (internal quotations and citations omitted).

SF 496 leaves educators to guess where the line falls between a prohibited "description" of a sex act and a permitted "reference" or "mention." Iowa Admin. Code r. 281—12.2(256). This distinction – central to the statute's operation – has no clear boundary. The District Court itself illustrated the ambiguity by comparing two nearly identical statements from *Lawn Boy*: one saying "I had oral sex with Doug

32

Appellate Case: 25-1819    Page: 35    Date Filed: 08/01/2025 Entry ID: 5543976

Goble," and the other "I put Doug Goble's dick in my mouth." *Penguin Random House*, 774 F. Supp. 3d at 1025. Under the State's theory, only the latter constitutes a "description" requiring removal. Yet it is difficult to imagine school employees, facing discipline or loss of licensure, feeling confident parsing such hair-splitting distinctions in real time. The rule's vague text raises fundamental due process concerns and invites arbitrary enforcement.

Given the array of penalties, including disciplinary action, loss of teaching licenses, and termination of employment,[10] such vagueness is unacceptable and unconstitutional.

## CONCLUSION

For the reasons set forth above, Amici urge that the order of the District Court be affirmed.

*(Signature block on following page)*

---

[10] See Iowa Code §§ 256.11 (9)(a)(3) (SF496 § 2), 256.146 (4), 279.27; Iowa Admin. Code r. 282—25.3(256).

Appellate Case: 25-1819    Page: 36    Date Filed: 08/01/2025 Entry ID: 5543976

Respectfully submitted,

DENTONS US LLP

*/s/ Rebecca Hughes Parker*
Rebecca Hughes Parker
1221 Ave of the Americas
New York, NY 10020
(212) 768-6700
rebeccahughes.parker@dentons.com


Harrison Rosenthal
4520 Main Street, Suite 1100
Kansas City, MO
(816) 460-2400
harrison.rosenthal@dentons.com


*Attorneys for Amici Curiae*

34

# CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION AND TYPEFACE AND TYPESTYLE REQUIREMENTS

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 5,457 words from the Statement through the Conclusion, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally space typeface using Microsoft Word with Century Schoolbook 14-point font.

*/s/* Rebecca Hughes Parker

July 24, 2025

35

Appellate Case: 25-1819    Page: 38    Date Filed: 08/01/2025 Entry ID: 5543976

## CERTIFICATE OF COMPLIANCE WITH EIGHTH CIRCUIT RULE 28A(h)

Pursuant to this Court's Rule 28A(h), I hereby certify that the electronic version of this Brief of Amicus Curiae American Booksellers for Free Expression; Association of American Publishers, Inc.; Comic Book Legal Defense Fund; Independent Book Publishers Association; Educational Book and Media Association; Freedom To Learn Advocates; Freedom to Learn Foundation; Half Price Books, Records, Magazines, Inc.; Science Fiction and Fantasy Writers' Association, and Sisters in Crime has been scanned for viruses and is virus-free.

/s/ Rebecca Hughes Parker

July 24, 2025

36

# CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2025, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

*/s/* Rebecca Hughes Parker

July 24, 2025

Appellate Case: 25-1819    Page: 40    Date Filed: 08/01/2025 Entry ID: 5543976