No. 25-1819

# IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

PENGUIN RANDOM HOUSE, LLC; HACHETTE BOOK GROUP, INC., *ET AL.*,
*Plaintiffs—Appellees,*
v.
JOHN ROBBINS, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE IOWA
STATE BOARD OF EDUCATION, *ET AL.*,
*Defendants—Appellants*

Appeal from the United States District Court
for the Southern District of Iowa
No. 4:23-cv-00478-SHL-SBJ,
Hon. Stephen H. Locher, presiding

## BRIEF *AMICI CURIAE* OF THE PLAINTIFFS-APPELLEES IN *IOWA SAFE SCHOOLS, ET AL., V. KIM REYNOLDS, ET AL.,* (NO. 25-2186) IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE

Thomas D. Story
AMERICAN CIVIL LIBERTIES UNION
  OF IOWA FOUNDATION
505 Fifth Avenue, Suite 808
Des Moines, IA 50309
(515) 243-3988

Laura J. Edelstein
JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105
(628) 267-6800

Camilla B. Taylor
LAMBDA LEGAL DEFENSE AND
  EDUCATION FUND, INC.
3656 N. Halsted
Chicago, IL 60613
(312) 663-4413

*Attorneys for Amicus Curiae*

(Additional counsel listed on signature block)

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Iowa Safe Schools states that it does not have a parent corporation and that no publicly held company owns 10% or more of its stock.

Dated: July 25, 2025

*/s/ Thomas D. Story*
Thomas D. Story

ii

Appellate Case: 25-1819   Page: 2   Date Filed: 08/06/2025 Entry ID: 5545331

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT.............................................ii

TABLE OF CONTENTS .......................................................iii

TABLE OF AUTHORITIES.....................................................iv

STATEMENT OF IDENTITY AND INTEREST. ................................... 1

STATEMENT OF COMPLIANCE WITH RULE 29................................ 4

SUMMARY OF ARGUMENT ................................................... 4

ARGUMENT ................................................................. 7

    I.       The Library Restriction Is Unconstitutionally Vague. .......... 7

    II.      The Library Restriction Is Not Related To "Legitimate Pedagogical Concerns". ....................................... 13

    III.    The Court Should Again Hold The State Is Not Engaging In Government Speech....................................... 18

CONCLUSION .............................................................23

CERTIFICATE OF COMPLIANCE ....................................... 26

CERTIFICATE OF SERVICE...............................................27

Appellate Case: 25-1819    Page: 3    Date Filed: 08/06/2025 Entry ID: 5545331

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico,*
457 U.S. 853 (1982)......................................................................14, 20

*El Paso Nat. Gas Co. v. Neztsosie,*
526 U.S. 473 (1999).............................................................................9

*GLBT Youth in Iowa Schools Task Force v Reynolds,*
114 F.4th 660 (8th Cir. 2024) ....................................................passim

*Grayned v. City of Rockford,*
408 U.S. 104 (1972)...........................................................................10

*Hazelwood Sch. Dist. v. Kuhlmeier,*
484 U.S. 260 (1988)..................................................................5, 13, 15

*Henerey ex rel. Henerey v. City of St. Charles, Sch. Dist.,*
200 F.3d 1128 (8th Cir. 1999)............................................................13

*Iowa Safe Schools v. Reynolds,*
No. 4:23-cv-00474, 2025 WL 1834140 (S.D. Iowa) ........................2-3, 9

*Kreimer v. Bureau of Police for Town of Morristown,*
958 F.2d 1242, 1255 (3d Cir. 1992) ...................................................21

*Little v. Llano County,*
138 F.4th 834 (5th Cir. 2025) (*en banc*)...................................18-19, 20

*Millikin v. Bradley,*
418 U.S. 717 (1974)........................................................................13-14

*Moody v. NetChoice,*
603 U.S. 707 (2024).............................................................................8

Appellate Case: 25-1819    Page: 4    Date Filed: 08/06/2025 Entry ID: 5545331

*Morse v. Frederick,*
  551 U.S. 393 (2007)..................................................................14, 18

*PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.,*
  711 F. Supp. 3d 1325 (N.D. Fla. 2024)................................................21

*Penguin Random House, LLC v. Robbins,*
  774 F. Supp. 3d 1001 (S.D. Iowa 2025)........................................ passim

*Pratt v. Indep. Sch. Dist. No. 831,*
  670 F.2d 771 (8th Cir. 1982).................................................15

*San Antonio Indep. Sch. Dist. v. Rodriguez,*
  411 U.S. 1 (1973).................................................................14

*Shurtleff v. Boston,*
  596 U.S. 243 (2022)..............................................................20

*Stephenson v. Davenport Cmty. Sch. Dist.,*
  110 F.3d 1303 (8th Cir. 1997).................................................10

*United States v. American Ry. Express Co.,*
  265 U.S. 425 (1924)...............................................................9

*United States v. Bearden,*
  780 F.3d 887 (8th Cir. 2015) ...............................................19

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
  455 U.S. 489 (1982)................................................................8

*W. Va. State Bd. of Educ. v. Barnette,*
  319 U.S. 624 (1943)..............................................................23

*Walls v. Sanders,*
  — F.4th —, 2025 WL 1948450 (8th Cir. July 16, 2025).............9, 15, 22

Appellate Case: 25-1819     Page: 5     Date Filed: 08/06/2025 Entry ID: 5545331

## Statutes

Iowa Code § 256.11(9)(a)(2) ..................................................................22

Iowa Code § 256.18(1)(*b*) ...............................................................16-17

Iowa Admin. Code r.281 12.39(10)(*a*)-(*c*) ..............................................16

Senate File 496, 2023 Iowa Acts ch. 91 ...............................................7

## Other Authorities

James Stratton, *Iowa Gov: 'I don't think that's appropriate':
Context and controversy behind book challenged in Iowa*, KCCI 8
Des Moines (updated Jan. 24, 2022, 10:21 AM CST),
https://tinyurl.com/2zah6wn2. ............................................................11

Samantha Hernandez et al., *Iowa Book Ban's Toll:
3,400 Pulled books, including '1984' and 'To Kill a Mockingbird'*,
Des Moines Reg. (Dec. 30, 2024), https://tinyurl.com/y8xr8s9z .............11

*Senate Video (2023-03-22)*,
90th IA S. Sess. 73rd Day at 6:46:42 PM, (Mar. 22, 2023)
(quoting IA Sen. Rozenboom)...............................................................11

Appellate Case: 25-1819     Page: 6     Date Filed: 08/06/2025 Entry ID: 5545331

# STATEMENT OF IDENTITY AND INTEREST

Amici are the Plaintiffs-Appellees in *Iowa Safe Schools, et al. v. Reynolds*, No. 25-2186[1], a case pending before this Court in which Amici raise overlapping claims against enforcement of the "Library Restriction" as the Plaintiffs-Appellees in this matter (hereinafter, the "PRH Plaintiffs"). Amici and the PRH Plaintiffs previously appeared before this Court in the consolidated appeal of *GLBT Youth in Iowa Schools Task Force v Reynolds*, 114 F.4th 660 (8th Cir. 2024) "*GLBT Youth II*", which resulted in vacatur of the previous preliminary injunction against the Library Restriction and remand for further analysis. Following this decision, Amici and PRH Plaintiffs each amended their complaints and renewed their respective motions for preliminary injunction. The hearing on these motions was again consolidated.

On March 25, 2025, the District Court entered its ruling in this matter, preliminarily enjoining enforcement of the Library Restriction.

---

[1] Amici are: Iowa Safe Schools, formerly known as GLBT Youth in Iowa Schools Task Force; Belinda Scarrott, Next friend P. B.-P.; Richard Carlson, Next friend A.C.; Ulrike Carlson, Next Friend A.C.; Eric Saylor, Next friend T.S.; Brigit Stevens, Next friend B.F.S.; Joseph Stevens, Next friend B.F.S.; Lara Newsom, Next friend B.F.; John Doe, Next friend James Doe; Daniel Gutmann; and Alyson Telford.

Appellate Case: 25-1819    Page: 7    Date Filed: 08/06/2025 Entry ID: 5545331

*Penguin Random House, LLC v. Robbins*, 774 F. Supp. 3d 1001, 1037

(S.D. Iowa 2025). On May 15, 2025, the District Court entered a ruling in

Amici's case and stated the following:

> In a recent ruling in Case No. 4:23-cv-00478, the Court enjoined enforcement of the Library Provision, concluding it was likely facially unconstitutional under the First Amendment. For the reasons set forth in that ruling (which will not be repeated here), the Court will grant Plaintiffs' Motion for Preliminary Injunction as it relates to the Library Provision. The Court recognizes that the State Defendants have appealed the ruling, and the Court of course will abide by the Eighth Circuit's disposition of that appeal.

*Iowa Safe Schools v. Reynolds*, No. 4:23-cv-00474, 2025 WL 1834140, at

*8 (S.D. Iowa). The State Defendants[2] appealed the ruling from Amici's

case as well, and that appeal is now pending separately before this Court.

Given this procedural background and the overlap of Amici's and PRH

Plaintiff's claims, Amici have a significant interest in this Court's

disposition here as it could be dispositive of part of their own appeal.

Amici include six Iowa public school students, ranging from fifth

grade to high school. The Library Restriction "directly limits the books

and materials they can obtain from the school library." *Iowa Safe Schools*,

---

[2] Amici use the term "State Defendants" collectively to refer, with respect to Case No. 25-1819, to Defendants Robbins, Snow, and Janzen, and, with respect to Case No. 25-2186, to Defendants Reynolds, Snow, and Robbins.

2

2025 WL 1834140, at *6. These students previously testified to the importance they place on school libraries with a diverse selection of materials, noting how this space for self-guided discovery made them "feel safe." They further testified to how it felt to have books they not merely wanted to read, but which reflect their identities and experiences, removed due to this law. This was "degrading"; made them feel that they "should feel ashamed" or were "being erased"; and caused them to question whether "there is something wrong" with them for sharing characteristics with the characters in these "banned" books.

Amici also include two educators at Iowa schools. As teachers who maintain diverse classroom libraries, these Amici are "plausibly subject to discipline" if they violate the Library Restriction. *Iowa Safe Schools*, 2025 WL 1834140, at *6. They testified to the educational benefits to their students of including books featuring "characters and experiences that are historically underrepresented in literature," which they explain help students find "comfort in learning they weren't alone" and, for others, to learn "inclusion and respect for those" of different backgrounds. They also testified to the substantial confusion they and their fellow

3

Appellate Case: 25-1819    Page: 9    Date Filed: 08/06/2025 Entry ID: 5545331

educators experienced, summed in the question, "At what point do I cross the line of this law?"

These experiences and their interest in their own litigation justify consideration of Amici's perspective and analysis of this key component of SF 496.[3] Amici submit this brief in support of the PRH Plaintiffs-Appellees and urge the Court to affirm the District Court's ruling enjoining the Library Restriction.

## STATEMENT OF COMPLIANCE WITH RULE 29

All parties have consented to the filing of this brief. No counsel for a party authored any part of this brief. And no one other than the amicus curiae, its members or its counsel financed its preparation or submission.

## SUMMARY OF ARGUMENT

Amici agree with and fully support the arguments provided by the PRH Plaintiffs urging affirmance. The Library Restriction is an overbroad infringement upon First Amendment rights. As they did before the District Court, however, Amici highlight in the record other

---

[3] Certain other parts of this legislation, specifically those relating to gender identity "programs" and gender-affirming "accommodations," are not at issue here and are subject to the appeal of the order granting in part Amici's motion for preliminary injunction.

4

constitutional infirmities in the Library Restriction that offer additional bases to affirm the ruling.

First, Amici advance the claim that the Library Restriction's vagueness does not just exacerbate its overbreadth, it independently renders the Provision facially unconstitutional. The inherent subjectivity of terms like "describe" and "reference" require consequent subjectivity in enforcement. The failure of the State Defendants to provide any clear standard not only resulted in wildly inconsistent "banned books lists," it also revealed discrimination in enforcement. Whether books with LGBTQ+ characters or themes were the actual target of SF 496 or only those repeatedly singled out for examples, these books were removed disproportionately to others. Amici, representing Iowa LGBTQ+ youth and educators, uniquely felt the stigma of this categorical attack on their identity.

Second, while Amici agree with the PRH Plaintiffs and the District Court that the "legitimate pedagogical concern" test derived from *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988) for school-sponsored student speech is not the appropriate test to measure the Library Restriction's constitutionality, Amici, as before the District

5

Court, argue that even *if* the Court were to apply the test to the Library Restriction, it would still fail. The *Hazelwood* test, inapplicable as it may be to these circumstances, is nevertheless not to be understood as "government speech lite." Under even the most deferential of constitutional standards, a law must still be rational and not strike against its own stated objective. The Library Restriction, on the other hand, irrationally forces the removal of books that, by virtue of their having been selected for inclusion in a school library at all, necessarily support the educational objectives of the students to whom they were available. Such removals contradict—and do not advance—any legitimate pedagogical concern the State may possess. The State Defendants' attempt to separate the *Hazelwood* test from its context and stake out the authority of a statewide censor in all school-related activities is a direct threat to Amici and other minority voices the First Amendment was intended to protect.

Finally, Amici respond to the State Defendants' attempt to reassert the "government speech" defense. This Court previously rejected this

6

Appellate Case: 25-1819   Page: 12   Date Filed: 08/06/2025 Entry ID: 5545331

argument and, on remand, the State abandoned it.[4] The State Defendants raise the argument again without pointing to any change in circumstance or binding law and, thus, it fails for that reason. The First Amendment and the courts' authority to strike down laws inconsistent with it provide Amici some measure of confidence in their freedom from government infringement upon their expressions of identity. Moreover, it further counsels government actors, including the Iowa legislature, to refrain from overreach. Expanding the government speech doctrine to new and unsupported contexts—thereby insulating the government from First Amendment review—only encourages self-censorship and abuse.

## ARGUMENT

### I. The Library Restriction Is Unconstitutionally Vague.

The "Library Restriction" of Senate File 496, 2023 Iowa Acts ch. 91 ("SF 496"), which demands schools and educators remove any book from school library shelves that contains "descriptions or visual depictions of

---

[4] The PRH Plaintiffs note the only mention of "government speech" in response to their Motion for Preliminary Injunction is found in a footnote. (Br. of Pls.-Appellees at 8); (App. 118; R. Doc. 102, at 14). In response to Amici's Motion for Preliminary Injunction, the State Defendants did not include even this; they did not mention government speech at all.

7

a sex act," is unconstitutionally vague because it fails to articulate a clear and workable standard.

The first step in assessing whether a law's sweep infringes the First Amendment's overbreadth restriction is identifying the law's scope, *Moody v. NetChoice*, 603 U.S. 707, 744 (2024). The PRH Plaintiffs correctly identify this vagueness and explain how it expands the reach of the Library Restriction beyond constitutionally permissible bounds. (Br. of Pls.-Appellees at 44-45). *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982). Amici agree with the PRH Plaintiffs that the scope of the Library Restriction is clear in the pertinent respect for overbreadth analysis: it applies solely to expressive activities (school library books), and, unlike in *NetChoice*, no additional evidence is needed to determine how this expression functions. (Br. of Pls.-Appellees at 27). There is an alternative, however, to this overbreadth analysis: to assess first the standard adopted by the Library Restriction under well-established void-for-vagueness principles.[5]

---

[5] The PRH Plaintiffs did not move for preliminary injunction on the basis of vagueness. *See Penguin Random House*, 774 F. Supp. 3d at 1015 n.4. Amici did, *see* Br. in Support of Mot. for Prelim. Inj. at 13-14, *Iowa Safe Schools v. Reynolds*, No. 4:23-cv-00474 (Oct. 19, 2024) (Dkt. 115-1), though given the District Court had already enjoined the Library

8

Appellate Case: 25-1819    Page: 14    Date Filed: 08/06/2025 Entry ID: 5545331

The phrase "descriptions or visual depictions" flattens and fails to capture the nuance of literary expression. Books do not "describe" or "depict" so much as they convey ideas through literary devices such as allegory, imagery, metaphor, and allusion. State Defendants' attempts to clarify SF 496 both underscore and fail to cure this underlying defect. While referencing a statutory list of "sex acts" may define the acts themselves, it does nothing to clarify when a book "describes" or "depicts" them. State Defendants' attempt to qualify the term "description or

Restriction on overbreadth grounds, the District Court had no reason to address this additional basis. *See Iowa Safe Schools*, 2025 WL 1834140, at *8 (granting preliminary injunction on reasoning set forth in related case). Identifying the vagueness of the Library Restriction does not represent an "attack upon the reasoning of the lower court"; it is merely "additional grounds why the decree should be affirmed." *United States v. American Ry. Express Co.*, 265 U.S. 425, 435-36 (1924); *see also El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999). These additional grounds do not enlarge the rights of any party to the lessening of others but simply offer a reason to "sustain that relief on an alternative basis." *Cf. Walls v. Sanders*, — F.4th —, 2025 WL 1948450, at *7 (8th Cir. July 16, 2025) (addressing cross-appeal rule). Moreover, the Library Restriction's unconstitutional vagueness is apparent from its text, yet, to the extent needed, the existing record amply supports this conclusion. *See generally* Br. of Pls.-Appellees at 31–34 (citing record evidence including admission of Defendant Robbins of "a lot of confusion" about Library Restriction and that educators are "guessing what is right or wrong" under its terms, (App. 239; R. Doc. 104-7, at 2), as well as statement from school librarians concerning the "uncertainty in many cases" left when trying to understand the law, (App. 189; R. Doc. 104-1, at ¶ 21)).

Appellate Case: 25-1819   Page: 15   Date Filed: 08/06/2025 Entry ID: 5545331

visual depictions" as more than a mere "reference" or "mention" also fails to provide any clarity. *See Penguin Random House LLC*, 774 F. Supp. 3d at 1025 ("The Court has reservations about adopting the State Defendants' position."). Nor does the canon of constitutional avoidance resolve this defect. The terms "description," "depiction," "reference," and "mention" are all inherently subjective and relative: just as it is unclear what constitutes a "description" or "depiction," it is unclear what constitutes more than a mere "reference" or "mention."

Moreover, absent a clear standard, application of the law would be arbitrary and discriminatory. *See Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1310-11 (8th Cir. 1997) (invalidating regulation violating "a central purpose of the vagueness doctrine that 'if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.'") (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). Because the Library Restriction does not establish a clear standard for prohibited content, school officials tasked with enforcing the Library Restriction are required to exercise improper discretion as to whether a book should be removed. *See id.* There is no implementing regulation the State Defendants could

10

promulgate that would render this inherently vague statutory text constitutional.

The consequences of this improper discretion are already evident. Faced with harsh penalties for failing to adhere to the law, school officials have removed books even when unsure whether the Library Restriction applies. *See Penguin Random House LLC*, 774 F. Supp. at 1009-11. These deficiencies, coupled with SF 496's legislative history ("We all know what we're talking about here."),[6] and surrounding discourse,[7] have resulted in libraries consistently targeting books with LGBTQ+ themes.[8]

Targeting such books imposes unique harm on Amici students and others like them who belong to the shunned group. (Supp. Declaration of B.F. at ¶ 13, *Iowa Safe Schools v. Reynolds*, No. 4:23-cv-00474 [hereinafter, *"Iowa Safe Schools"*] (Oct. 19, 2024) *(*Dkt. 115-2) (stating as

---

[6] *Senate Video (2023-03-22)*, 90th IA S. Sess. 73rd Day at 6:46:42 PM, (Mar. 22, 2023) (quoting IA Sen. Rozenboom).

[7] *See, e.g.*, James Stratton, *Iowa Gov: 'I don't think that's appropriate': Context and controversy behind book challenged in Iowa*, KCCI 8 Des Moines (updated Jan. 24, 2022, 10:21 AM CST), https://tinyurl.com/2zah6wn2.

[8] *See* Samantha Hernandez et al., *Iowa Book Ban's Toll: 3,400 Pulled books, including '1984' and 'To Kill a Mockingbird'*, Des Moines Reg. (Dec. 30, 2024), https://tinyurl.com/y8xr8s9z (two of the top ten most frequently removed books feature LGBTQ+ themes: *The Perks of Being a Wallflower* (No. 5) and *The Color Purple* (No. 10)).

Appellate Case: 25-1819     Page: 17     Date Filed: 08/06/2025 Entry ID: 5545331

to removal of books with LGBTQ+ themes or characters, "It makes me feel like I should be ashamed of who I am."); (Supp. Declaration of P.B.-P. at ¶¶ 5, 8, *Iowa Safe Schools* (Oct. 19, 2024) (Dkt. 115-3) (noting books with LGBTQ+ representation targeted for removal from school library and stating, "Being able to access these books at school makes me feel safe and welcomed in that library, and I'm sure it does for many others."); (Supp. Declaration of T.S. at ¶ 8, *Iowa Safe Schools* (Oct. 19, 2024) (Dkt. 115-5) (stating as to removal of book with LGBTQ+ character, "I feel like who I am is being erased from public view.").

To be clear, Amici do not suggest that the First Amendment deprives librarians of ordinary discretion in curating noncurricular school library content. Perversely, the Library Restriction's vague and unworkable standard has forced educators, fearing discipline, to act *against* their better judgment and remove books perceived to be the target of the State. (Supp. Declaration of B.F.S. at ¶ 13, *Iowa Safe Schools* (Oct. 19, 2024) (Dkt. 115-10) ("I want to read books at school that reflect my identity and experience and I know many of my teachers and librarians want that too."). By creating a vague standard and coupling it with a statewide, one-size-fits-all mandate to comply, the Library

12

Restriction has taken schools' discretion away from reasoned and principled selection, in favor of an obligation to engage in ad hoc and discriminatory removal.

## II.  The Library Restriction Is Not Related To "Legitimate Pedagogical Concerns".

The District Court correctly concluded that the test articulated in *Hazelwood* does not apply. *See Penguin Random House*, 774 F. Supp. 3d at 1017-19. *Hazelwood* provides the test for school-sponsored speech, applied to newspaper articles written and edited in a journalism class, or campaign materials distributed in a student council election supervised by a school administrator. *See* 484 U.S. at 262-63; *Henerey ex rel. Henerey v. City of St. Charles, Sch. Dist.*, 200 F.3d 1128, 1133 (8th Cir. 1999). Books on a school library's shelves—of which there might be thousands, written by authors unaffiliated with the school and covering countless topics, perspectives, and viewpoints—stand in stark contrast.

Moreover, as the PRH Plaintiffs recognize, the central justification for the *Hazelwood* test—community-led education—is absent from the Library Restriction's mandate. (Br. of Pls.-Appellees at 23-25). While *Hazelwood* arose out of historical discretion given to fact-specific local educational decisions, *see, e.g.*, *Millikin v. Bradley*, 418 U.S. 717, 741–42

13

(1974) (emphasizing "tradition in public education" of "local control over the educational process"), the State is attempting to claim sweeping authority for itself. Allowing the State to censor any speech that interferes with a broadly defined "educational mission" or "pedagogical concern," but not informed by "local needs," *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 50 (1973), carries a clear potential for misuse and manipulation, as state legislatures will be able to censor any speech that does not align with political views. This "strikes at the very heart of the First Amendment." *Morse v. Frederick*, 551 U.S. 393, 423 (2007) (Alito, J., concurring). If permitted, the "puritanical 'pall of orthodoxy'" that the District Court warned against will not be limited to any particular school library. *Penguin Random House*, 774 F. Supp. 3d at 1032 (quoting *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 870 (1982)). Instead, it will be cast statewide.

Even if *Hazelwood* were the appropriate test (it is not), the Library Restriction would not pass constitutional muster because the removal of these books is not rationally related to a legitimate pedagogical concern. In its ruling, the District Court noted two "alternative reading[s]" of *Hazelwood*: the first in which "legitimate pedagogical concerns" considers

14

the context of the restriction and is applied "essentially the same way as it applied the 'substantial and reasonable governmental interest' from *Pico* and *Pratt* [*v. Indep. Sch. Dist. No. 831*, 670 F.2d 771 (8th Cir. 1982)]"; and another in which categorical restrictions on speech in schools are always permissible. *See Penguin Random House*, 774 F. Supp. 3d at 1035-36.

The District Court, with reservations, concluded the latter was supported by precedent (if one were to assume the test applied at all, which the court correctly concluded it did not), *see id.* Subsequent authority from this Court, however, has instead articulated the former. *See Walls v. Sanders*, — F.4th —, 2025 WL 1948450, at *5 (8th Cir. July 16, 2025) ("Indeed, [*Pratt's* substantial and reasonable governmental interest] test resembles the one applied to the government's regulation of *student* speech in school-sponsored settings.") (emphasis in original) (citing *Hazelwood*, 484 U.S. at 273). In short, context matters, and the authority to further "legitimate pedagogical concerns" is not unreviewable.

As this Court has stated, "[t]he purpose of public school libraries is to advance the school curriculum—that is, to facilitate the pedagogical

15

mission of the school." *GLBT Youth II*, 114 F.4th at 670. By offering a book in a school library, the school's librarian—relying on information from experts and their own qualifications, along with oversight from school administrators—therefore decided that the book *supported* the school's pedagogical mission. That decision was ultimately affirmed by the fact that the book remained on the school library's shelves, despite the reconsideration process already available on a book-by-book basis in Iowa. *See* Iowa Admin. Code r.281 12.39(10)(*a*)-(*c*). Removing these books on a statewide basis expressly contradicts that goal. (Declaration of Daniel Gutmann at ¶¶ 18-20, *Iowa Safe Schools* (Oct. 19, 2024) (Dkt. 115-11) (stating he maintains "a diverse and inclusive collection of books" in classroom library because the availability of such books "is important for my students' self-esteem and social awareness"); (Declaration of Alyson Telford at ¶ 22, *Iowa Safe Schools* (Oct. 19, 2024) (Dkt. 115-12) ("When students can read about a character facing similar situations as themselves, they feel less alone. . . . [I]t helps students grow emotionally to begin to empathize with other people as well."). *See also* Iowa Code § 256.18(1)(*b*) (stating schools should instill in students qualities of

16

"caring," "justice and fairness," "respect," "courage," "kindness," and "compassion").

The State argues that "[d]escriptions of sex acts in books available at school raise legitimate pedagogical concerns," as does "[a]voiding 'controversial and sensitive topics.'" Br. of Defs.-Appellants at 28, 30. That a book contains a "description" or "visual description" of a sex act does not categorically render it either inappropriate for school or inconsistent with Iowa's "central mission of educating Iowa children." *GLBT Youth II*, 114 F.4th at 670. The educational value of classic, award-winning works such as *I Know Why the Caged Bird Sings*, *As I Lay Dying*, *Their Eyes Were Watching God*, *Slaughterhouse Five*, and *1984*—books that have been available in schools for decades, all of which have been removed from various Iowa schools under SF 496—is not entirely negated by a fleeting or vague description of a sex act. *See Penguin Random House*, 774 F. Supp. 3d at 1034-35 (identifying removal under Library Restriction of books with "undeniable political, artistic, literary, and/or scientific value," and noting availability of such books "is wholly consistent with the mission of educating Iowa children"). Otherwise, as

17

little as a single sentence in a 400-page book would warrant the book's removal from every school library across the state.

Moreover, as the District Court noted, the Supreme Court has cautioned against a broad application of *Hazelwood* like the one sought by the State. *Id.* at 1035. Sweeping library books into *Hazelwood*'s ambit would dramatically expand school officials' ability to foist their political and social views upon students—precisely what Justice Alito cautioned against in *Morse*, 551 U.S. at 423 (Alito, J., concurring). Justice Alito was right to recognize the inherent danger in granting schools broad authority to censor speech under *Hazelwood*. Doing so "would give public school authorities a license to suppress speech on political and social issues based on disagreement with the viewpoint expressed." *Id.*

## III. The Court Should Again Hold The State Is Not Engaging In Government Speech.

In *GLBT Youth II*, this Court expressly declined to extend the government speech doctrine "to the placement and removal of books in public school libraries." 114 F.4th at 667. Yet the State Defendants now ask this Court to overrule the relevant holding of *GLBT Youth II*, just one year after it was decided. The only thing that has changed in the meantime is that the Fifth Circuit in *Little v. Llano County*, 138 F.4th

18

834 (5th Cir. 2025) (*en banc*), reversed its own precedent with a minority breaking with this Court and every other court in recent years in an unprecedented extension of the government speech doctrine to book removals from public school libraries. Even if *GLBT Youth II* did not squarely foreclose the State Defendants' argument in this posture,[9] this Court should still reject that argument for the reasons explained by the *GLBT Youth II* Court, the *Little* dissenters, and other courts.

*First*, contrary to the State Defendants' argument, the Supreme Court's decision in *Pico*. Br. of Defs.-Appellants' at 44 (quoting *Little*, 138 F.4th at 844). By any measure, the Supreme Court roundly rejected the extreme position that the First Amendment places no limits at all on the removal of public school library books. "Justice White's opinion in *Pico* is the narrowest concurrence" in that case, and that opinion "agreed with the plurality, affirming the Second Circuit," that the school board's motivation for removing books "presented an issue of fact that was material to the constitutional analysis, precluding summary judgment."

---

[9] "It is well-established in [this] circuit that one panel cannot overrule an opinion filed by another panel." *United States v. Bearden*, 780 F.3d 887, 896 (8th Cir. 2015).

Appellate Case: 25-1819    Page: 25    Date Filed: 08/06/2025 Entry ID: 5545331

*Little*, 138 F.4th at 878 (Higginson, J., dissenting).[10] Moreover, "a supermajority of the Court" recognized that the First Amendment at least prohibits "narrowly partisan or political" book removals from public school libraries. *Id.* at 878–79 (quotation marks omitted) (citing *Pico*, 457 U.S. at 870–71 (Brennan, J., joined by Marshall, Stevens, and Blackmun, JJ.), 907 (Rehnquist, J., joined by Burger, C.J., and Powell, J., dissenting)).

*Second*, even if this Court could ignore *Pico* entirely (and it cannot), the Supreme Court's modern test for the government speech doctrine makes clear the doctrine has no applicability here. That test requires courts to consider "(1) the history of the expression at issue; (2) the public's likely perception as to who is speaking; and (3) the extent to which the government has actively shaped or controlled the expression." *GLBT Youth II*, 114 F.4th at 667 (citing *Shurtleff v. Boston*, 596 U.S. 243, 252 (2022)). This Court reasoned in *GLBT Youth II* that all three considerations pointed against application of the government speech

---

[10] *See Pico*, 457 U.S. at 883 (White, J., concurring in the judgment) (expressing a preference for "findings of fact and conclusions of law ... made by the District Court" on the "unresolved factual issue" of "the reason or reasons underlying the school board's removal of the books" prior to conclusively deciding the First Amendment issues).

20

doctrine: "the placement and removal of books in public spaces" is nothing like forms of expression historically used to convey the government's ideas, such as "monuments in a park"; "it is doubtful that the public would view the placement and removal of books in public school libraries as the government speaking"; and "historically the government of Iowa has not asserted extensive control over removing books from public school libraries." *Id.* at 667–68. Courts elsewhere—the *en banc* Fifth Circuit minority excepted—have similarly recognized that the Supreme Court's government speech caselaw forecloses the doctrine's applicability to public library removals.[11]

Nor does this Court's recent decision in *Walls*, call into question the Court's government-speech holding in *GLBT Youth II*. To the contrary, the *Walls* Court reaffirmed that "[t]he Free Speech Clause's protection of a speaker's ability to disseminate information includes a reciprocal right

---

[11] *See, e.g.*, *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 711 F. Supp. 3d 1325, 1331 (N.D. Fla. 2024); *see also Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1255 (3d Cir. 1992) (reaffirming after *Pico* that "the First Amendment does not merely prohibit the government from enacting laws that censor information, but additionally encompasses the positive right of the public to access information and ideas," "include[ing] the right to some level of access to a public library, the quintessential locus of the receipt of information").

21

to receive that information." *Walls*, 2025 WL 1948450 at *3. While the *Walls* Court concluded that that right does not prohibit the government from restricting viewpoints that may be included in a school's *curriculum, see id.* at *3–6, mandatory curriculum is plainly more associated with the government than is the collection of books available in a public library. As this Court put it in *GLBT Youth II*:

> A well-appointed school library could include copies of Plato's *The Republic*, Machiavelli's *The Prince*, Thomas Hobbes' *Leviathan*, Karl Marx and Freidrich Engels' *Das Kapital*, Adolph Hitler's *Mein Kampf*, and Alexis de Tocqueville's *Democracy in America*.... [I]f Placing these books on the shelf of public school libraries constitutes government speech, the State is babbling prodigiously and incoherently.

114 F.4th at 668 (internal quotation marks and citation omitted).

In contrast to the statute at issue in *Walls*, which applied to any "communication by a public school employee, public school representative, or guest speaker that *compels* a person to adopt, affirm, or profess" certain ideas, *Walls*, 2025 WL 1948450 at *1 (emphasis added), SF 496—including its Library Restriction—impermissibly censors ideas available in wholly *optional* aspects of the school experience that allow students to learn and grow independently. *See* Iowa Code § 256.11(9)(a)(2) (requiring that each school library "*contains* only age-

22

appropriate materials" (emphasis added)). That is not government speech. That is government dictating to its young people "what shall be orthodox in politics, nationalism, religion, or other matters of opinion[.]" *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). This our Constitution does not permit.

## CONCLUSION

The Library Restriction is vague, overbroad, and incapable of passing any measure of constitutional scrutiny. The Restriction, with its offensive and anti-educational consequences, can be saved only if this Court were to reverse itself and grant the State Defendants' request for virtually unfettered censorship authority, for which they have no legitimate claim. For these reasons, in addition to those expressed by the PRH Plaintiffs, Amici respectfully request this Court affirm the ruling enjoining the Library Restriction.

Dated: July 25, 2025                    Respectfully submitted,

Thomas D. Story, AT0013130          Laura J. Edelstein
Shefali Aurora, AT0012874            Katherine E. Mather
Rita Bettis Austen, AT0011558        Benjamin Noah Rosenberg
AMERICAN CIVIL LIBERTIES UNION       JENNER & BLOCK LLP
 OF IOWA FOUNDATION                  525 Market Street, 29th Floor
505 Fifth Avenue, Suite 808          San Francisco, CA 94105
Des Moines, IA 50309                 (628) 267-6800

23

(515) 243-3988
thomas.story@aclu-ia.org
shefali.aurora@aclu-ia.org
rita.bettis@aclu-ia.org

Camilla B. Taylor
Kenneth D. Upton, Jr.
Nathan Maxwell*
LAMBDA LEGAL DEFENSE AND
  EDUCATION FUND, INC.
3656 N. Halsted
Chicago, IL 60613
(312) 663-4413
ctaylor@lambdalegal.org
kupton@lambdalegal.org
nmaxwell@lambdalegal.org

Karen L. Loewy
Sasha J. Buchert
LAMBDA LEGAL DEFENSE AND
  EDUCATION FUND, INC.
815 16th Street, N.W., Suite 4140
Washington, DC 20006
(202) 804-6245
kloewy@lambdalegal.org
sbuchert@lambdalegal.org


*Member of the Arizona bar.
Practicing under the supervision of
a member of the Illinois bar.

LEdelstein@jenner.com
KMather@jenner.com
NRosenberg@jenner.com

Anna K. Lyons
Effiong K. Dampha
JENNER & BLOCK LLP
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071-2246
(213) 239-5100
ALyons@jenner.com
EDampha@jenner.com

Joshua J. Armstrong
Tanner Lockhead
Mary-Claire Spurgin
JENNER & BLOCK LLP
1099 New York Avenue, NW,
Suite 900
Washington, DC 20001
(202) 639-6000
JArmstrong@jenner.com
TLockhead@jenner.com
MSpurgin@jenner.com

Daniel R. Echeverri
Christopher J. Blythe
Connor S.W. Rubin
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
DEcheverri@jenner.com
CBlythe@jenner.com
Connor.Rubin@jenner.com

24

Appellate Case: 25-1819    Page: 30    Date Filed: 08/06/2025 Entry ID: 5545331

Karen Lou
Kevin Si
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036-2711
(212) 891-1600
KLou@jenner.com
KSi@jenner.com

Appellate Case: 25-1819   Page: 31   Date Filed: 08/06/2025 Entry ID: 5545331

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

1. Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(f), the brief contains 4,790 words.

2. This brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Century Schoolbook font. As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

3. Pursuant to Eighth Circuit Local Rule 28 A(h), undersigned counsel hereby certifies that the brief has been scanned for viruses and that the brief is virus-free.

Dated: July 25, 2025                  */s/ Thomas D. Story*
                                      Thomas D. Story

Appellate Case: 25-1819     Page: 32     Date Filed: 08/06/2025 Entry ID: 5545331

# CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that pursuant to Circuit Rule28A(d) and within five days of receipt of the notice of this Court's acceptance of the brief for filing, I will cause ten (10) copies of the brief to be transmitted to the Court via overnight delivery, delivery charge prepaid.

Dated: July 25, 2025    */s/ Thomas D. Story*
            Thomas D. Story

Appellate Case: 25-1819 Page: 33 Date Filed: 08/06/2025 Entry ID: 5545331